**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**KRISTIN HRUBY,**

**Plaintiff,** **CIVIL ACTION NO.: 3:20cv00362**

**v.**

**CAPITAL ONE, N.A.,**

**Serve: c/o Corporation Service Company**
**100 Shockoe Slip, Fl. 2**
**Richmond, VA 23219**

**Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kristin Hruby (Ms. Hruby) alleges the following violations of her federal consumer protection rights against Defendant Capital One Bank, N.A. (Capital One):

## INTRODUCTION

1. Count I of Ms. Hruby's Complaint is based upon the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission (FCC).

## JURISDICTION AND VENUE

2. Jurisdiction of the court arises under 28 U.S.C. §§1331 and 47 U.S.C. §227.

3. Federal question jurisdiction exists because Capital One's conduct violates

Ms. Hruby's rights under the TCPA, a federal statute.

4. Capital One's decisions regarding the credit cards at issue are made in Virginia.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that Capital One resides in the Eastern District of Virginia.

6. Capital One is domiciled in Virginia; therefore, personal jurisdiction is established.

**PARTIES**

7. Ms. Hruby is a natural person residing in Sherman County, Nebraska.

8. Capital One is a creditor with a principal place of business and registered agent located in Richmond, Virginia.

9. Capital One acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

10. Capital One is attempting to collect one or more alleged debts from Ms. Hruby, originating from a Platinum MasterCard and a Menards branded credit cards.

11. Capital One's MasterCard and Menards credit card service agreements contain a choice of law provision that provides that the decision to grant credit is made in Capital One's Virginia offices and is governed by Virginia and federal law.

12. In or around November of 2019, Capital One began calling Ms. Hruby.

13. On or about November 26, 2019 at approximately 1:29 pm, Ms. Hruby

answered a call from Capital One and spoke with a representative.

14. After picking up the call, Ms. Hruby noticed a series of beeps, tones or clicks and an unusually long delay before Capital One's representative began speaking, consistent with the use of an automatic dialing system.

15. Capital One's representative informed Ms. Hruby that it was attempting to collect a debt allegedly incurred by Ms. Hruby on her Platinum MasterCard.

16. During that call, Ms. Hruby asked not to be called anymore on either phone numbers ending in (***) ***-3477 or (***) ***-6811 and instead that Capital One communicate with her by mail.

17. On or about December 9, 2019 at approximately 11:49 am, Ms. Hruby answered a call from Capital One and spoke with a representative who identified himself as Nicholas.

18. After picking up the call, Ms. Hruby again heard a series of beeps, tones or clicks and noticed an unusually long delay before Capital One's representative began speaking, consistent with the use of an automatic dialing system.

19. Capital One's representative informed Ms. Hruby that it was attempting to collect a debt allegedly incurred by Ms. Hruby on her Menards branded credit card.

20. Again, Ms. Hruby asked not to be called anymore and that Capital One should communicate with her by mail.

21. Despite her two requests that Capital One not call her, Capital One continued placing calls to Ms. Hruby 's cellular phone number (***) ***-3477, in an attempt to collect her alleged debt.

22. The calls mainly originated from the following numbers (800) 955-6600 and (800) 365-2024.

23. Upon information and belief, these numbers are owned or operated by Capital One.

24. Between November 26, 2019 and March 31, 2020, Capital One called Ms. Hruby on her cellular phone no less than **FOUR HUNDRED AND FORTY (440) times** after she had revoked consent.

25. On July 24, 2019, in response to varying district court opinions the US House of Representatives passed H.R. 3375 by a vote of 429-3. The House intended to clear up any ambiguity with the TCPA and made it clear that the TCPA covers systems that call consumers from a stored list.

26. H.R. 3375 further clarified that a consumer may revoke consent, even consent given in a contract.

27. Capital One is familiar with the TCPA.

28. Capital One called Ms. Hruby every single day for four months.

29. Capital One called Ms. Hruby several times a day, up to seven times a day.

30. Capital One called Ms. Hruby at all times during the day, from early in the morning to late at night.

31. Capital One even called Ms. Hruby on weekends.

32. Upon information and belief, Capital One has also called and texted, or attempted to call and text, friends and family of Ms. Hruby with the intention that they would communicate to Ms. Hruby that Capital One was attempting to collect a debt from

her, causing Ms. Hruby additional embarrassment and distress.

33. Upon information and belief, Capital One called Ms. Hruby and delivered prerecorded or artificial voice messages.

34. Upon information and belief, Capital One's automatic dialer failed to return to the on-hook state within 60 seconds of completion of dialing

35. Capital One's conduct was not only done willfully but was done with the intention of causing Ms. Hruby such distress, so as to induce her to pay the debt.

36. The frequency and methodology of Capital One's calls could reasonably be expected to harass Ms. Hruby.

37. Capital One's conduct was highly offensive, oppressive and outrageous, and exceeded reasonable collection efforts. Capital One's conduct was especially unreasonable because shortly after Ms. Hruby explained she could not pay, a situation that could not be resolved in such a short time, Capital One called Ms. Hruby relentlessly.

38. As a result of Capital One's conduct, Ms. Hruby has sustained actual damages including, but not limited to, stress, anxiety, embarrassment, severe emotional and mental pain, and anguish.

39. Each and every one of Capital One's telephone calls caused Ms. Hruby distraction and temporary loss of use of her telephone line.

40. Each and every one of Capital One's telephone calls caused Ms. Hruby anxiety, annoyance and embarrassment, as well as alerted other people that she was getting constant phone calls that caused her noticeable anxiety, annoyance and embarrassment.

//

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

41. Ms. Hruby incorporates the foregoing paragraphs as though the same were set forth at length herein.

42. Capital One violated the TCPA. Capital One's violations include, but are not limited to the following:

a. Within four years prior to the filing of this action, on multiple occasions, Capital One violated TCPA 47 U.S.C. §227 (b)(1)(A)(iii) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

b. Within four years prior to the filing of this action, on multiple occasions Capital One willfully and/or knowingly contacted Ms. Hruby at Ms. Hruby 's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and, as such, Capital One knowingly and/or willfully violated the TCPA.

43. As a result of Capital One's violations of 47 U.S.C. §227, Ms. Hruby is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that Capital One

knowingly and/or willfully violated the TCPA, Ms. Hruby is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §§227(b)(3)(B), (C).

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Ms. Hruby hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Hruby demands judgment be entered against Defendant Capital One, N.A. for the following:

A. Declaratory judgment that Capital One violated the TCPA;

B. Statutory damages pursuant to 47 U.S.C. §§227(b)(3)(B), (C);

C. Awarding Ms. Hruby any pre-judgment and post-judgment interest as may be allowed under the law; and

D. Any other relief that this Court deems appropriate.

Respectfully submitted this 11th day of May 2020,

**KRISTIN HRUBY**

By: ___/s/___

Susan M. Rotkis
Virginia Bar No. 40693
Attorney for Plaintiff
Price Law Group, APC
382 S. Convent Ave.
Tucson, AZ 85701
T: (818) 600-5506
F: (818) 600-5405
susan@pricelawgroup.com